**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JAMES ERWIN, JR., #04993-039**

      **Petitioner,**

                                    **Civil No: 04-CV-72620**
                                      **Honorable Arthur J. Tarnow**
                                      **Magistrate Judge Virginia M. Morgan**

**v.**

**H.J. MARBERRY,**

      **Respondent.**

_____

**OPINION & ORDER DENYING**
**PETITION FOR WRIT OF HABEAS CORPUS**

**I. Introduction**

      The petitioner, James Erwin, Jr., is a federal prisoner confined at the Federal Correctional Institution (FCI) Milan, Michigan. He filed a *pro se*, application for writ of habeas corpus under 28 U.S.C. §2241 with this Court on July 15, 2004 raising the following issues: (1) whether prison officials improperly intercepted the petitioner's mail, opened it and altered the outer envelope of the letter in order to give the appearance that the letter went through the U.S. Postal Service process for purposes of providing a falsified basis for opening the letter; (2) whether the severity of the petitioner's punishment was motivated by retaliatory objectives due to the petitioner's alleged refusal to act as an informant on behalf of the Special Investigation Service regarding illegal activity among the prisoners; and (3) whether the petitioner received an impartial disciplinary hearing because the Disciplinary Hearing Officer was biased against the Petitioner and adversely influenced by Officer Coleman's Incident Report. The petitioner contends that the prison officials' actions resulted in the loss of a portion of his good time credits, a disciplinary transfer, administrative

segregation, and temporary loss of visitation privileges.

On March 22, 2005, the Court dismissed the petitioner's application for writ of habeas corpus without prejudice as it found that the petitioner failed to challenge his federal conviction. *Erwin v. Marberry,* No. 04-CV-72620 (E.D.Mich. March 22, 2005) (Tarnow, J). The petitioner appealed this Court's decision to the United States Court of Appeals for the Sixth Circuit on April 22, 2005. On January 30, 2006, the Sixth Circuit entered an order relative to this matter stating in pertinent part:

> Upon review, we vacate the district court's judgment dismissing Erwin's §2241 petition. The district court dismissed the petition after concluding that Erwin was not challenging the fact or duration of his confinement. However, because Erwin was subjected to a loss of good time credits, affecting the duration of his confinement, he properly filed his petition pursuant to §2241, See, e.g., *Preiser v. Rodroguez,* 411 I.S. 475, 499-500 (1973).
>
> Accordingly, we vacate the district court's judgment and remand the case for further proceedings. Rule 34(j)(2)(C), Rules of the Sixth Circuit.

*Erwin v. Marberry,* No. 05-1527 (6th Cir. Jan. 30, 2006)

Pursuant to the Sixth Circuit's directive, this matter is presently before the Court on remand. For the reasons stated below, the Court will deny the petitioner's request for habeas relief.

## II. <u>Statement of Facts</u>

On June 24, 1994, in the United States District Court for the Eastern District of Michigan, the petitioner was convicted of possession with intent to distribute cocaine. He was sentenced to 264 months (22 years) imprisonment with eight years' supervised release. The petitioner's projected release date is October 24, 2011. The petitioner challenges the duration of his confinement, as he has been subjected to a loss of his good time credits, and raises the previously stated three issues for

the Court's review. The respondent asserts that: (1) the petitioner's application for habeas relief should be dismissed, at least in part, for failure to exhaust his administrative remedies; and (2) the Bureau of Prison's (BOP) disciplinary action did not result in a violation of the petitioner's constitutional rights.

The petitioner's habeas action arises from a letter, admittedly written on January 19, 2003 when he was an inmate at the Federal Correctional Complex (FCC) USP Terre Haute, Indiana. The petitioner admittedly wrote the letter to a female friend requesting that she bring contraband materials into the prison the next time she was scheduled to visit. Specifically, the petitioner requested alcoholic beverages, protein pills, Viagra, a radio, head phones, a disc player, and two-way radios. (Response to Petitioner, Exhibit 5, dated 3/7/03, pg. 2). The petitioner planned to use the two-way radio for purposes of sneaking out and obtaining more contraband. *Id.* at 1. He also indicated that the Viagra was for use during his conjugal visits. The letter came to the attention of prison officials because it was returned to the FCI marked "Returned to Sender." Upon examining the envelope and opening the letter, it was noticed that the letter was addressed to "Tina Harris," but the letter inside of the envelope was addressed to "Vicki." This discrepancy drew more attention to the contents of the letter. As a result of the petitioner's writing and mailing of this letter, he was placed in administrative detention pending an investigation of the matter.

On February 18, 2003 the petitioner was charged with: (1) attempted conduct which disrupts; (2) attempted introduction of a hazardous tool; and (3) unauthorized use of the mail. A disciplinary hearing was conducted on March 4, 2003, at which time the petitioner admitted to writing and mailing the letter. He was found guilty of violating the FCI rules and was sanctioned as follows:

(1) fifteen days in disciplinary segregation; (2) loss of visiting privileges for one year; (3) disallowance of 27 days good time credit; and (4) a disciplinary transfer.  (*Id.* at 3-4)*.*

The petitioner appealed the decision of the BOP to its Regional Office and the Central Office of Inmate Appeals.  The issues raised in those appeals are as follows: (1) whether the prison officials should have opened and read the petitioner's mail; (2) whether the disciplinary hearing officer was impartial; and (3) whether the severity of the charged violations was excessive.  Both of the petitioner's appeals were denied.  As explained in more detail above, the petitioner subsequently filed a habeas petition with this Court which was dismissed without prejudice.  The petitioner appealed to the Sixth Circuit, which vacated the decision of this Court and remanded the case for further proceedings.  The matter is now before this Court for review on the merits.

## III.  Standard of Review

Courts have uniformly held that claims asserted by federal prisoners seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. §2241.  *Capaldi v. Pontesso,* 135 F.3d 1122, 1123 (6th Cir. 1998).  "[It is] the likelihood of the effect on the overall length of the prisoner's sentence . . . [that] determines the availability of habeas corpus." *Ramirez v. Galanza,* 334 F.3d 850, 858 (9th Cir. 2003).  The petitioner's 28 U.S.C. §2241 claim is subject to *de novo* review.  *Williams v. Warden for Nevada,* 489 F.Supp.2d 1171, 1174 (D.Nev. 2007).

## IV.  Applicable Analysis

### A.  Exhaustion of 28 U.S.C. §2241 Claims

Federal prisoners are required to exhaust administrative remedies pursuant to 28 C.F.R.

§542.10-16 before filing a habeas corpus petition under 28 U.S.C. §2241. *United States v. Cobleigh,* 75 F.3d 242, 251 (6th Cir 1996). The exhaustion of an administrative remedies procedure required of a §2241 petitioner is not a statutory requirement, but instead is wholly judicially created. *Wesley v. Lamanna,* 27 Fed. Appx. 438, 439 (6th Cir. 2001). Although the petitioner sought an appeal of the disciplinary hearing decision to the Regional and Central Office levels of the FCI as required by the federal regulations, he failed to exhaust the retaliation claim presently before the Court.

Administratively, the petition raised the following issues: (1) whether the prison officials wrongfully opened and read the petitioner's mail; (2) whether the level of the charges was excessive; and (3) whether the disciplinary hearing officer was impartial. The

petitioner is now asserting the above stated claims and that the severity of his sanctions arose from the retaliatory motives of certain prison officials. The petitioner contends that because he would not agree to serve as an informant for the prison officials and report the wrongful or unlawful activities of his fellow inmates that the charges and sanctions against him were erroneously heightened.

However, the petitioner did not raise a retaliation claim during the administrative process before the Regional and Central Office levels of the exhaustion procedure. Therefore, under the facts presented, the Court concludes that the petitioner has failed to demonstrate compliance with the BOP's administrative remedy process relative to his retaliation claim. Failure by the petitioner to fully exhaust his claims warrants dismissal without prejudice. *Little v. Hopkins,* 638 F.2d 953, 953-54 (6th Cir. 1981). Because exhaustion is a judicially created requirement for §2241 petitions, the Court may waive the requirement if it finds that exhaustion would be futile. *Davis v. Keohane,* 835 F.2d 1147, 1149 (6th cir. 1987). Resort to administrative remedies is considered futile only

5

when there is "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue with an unwillingness to reconsider." *James v. Department of Health and Human Services,* 824 F.2d 1132, 1139 (D.C. Cir. 1987). Accordingly, exhaustion may also be excused if the Court determines that the unexhausted claim lacks merit. Because the Court finds that the petitioner's retaliation claim lacks merit, *infra*, exhaustion is excused.

      B.  Interception of Petitioner's Mail

            *1. Opening the Letter*

A prisoner's constitutional right to send and receive mail may be restricted only for legitimate penological interests (i.e., maintaining security, preventing the influx of contraband, hazardous tools, etc.). *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989). More specifically to this case, 28 C.F.R. §540.24 provides in pertinent part:

> Staff shall open and inspect for contraband all undeliverable mail returned to an institution by the Postal Office before returning it to the inmate. The purpose of this inspection is to determine if the content originated with the inmate sender identified on the letter or package; to prevent the transmission of material, substances, and property which inmates are not permitted to possess in the institution; and to determine that the mail was not opened or tampered with before its return to the institution.

In this case, the petitioner does not deny writing the letter, requesting the contraband be brought to the FCI, sending the letter, and nor does he disagree with the application of 28 C.F.R. 540.24 in an appropriate case. The petitioner asserts that his letter never reached the Post Office as it was never put into the mail by the BOP staff. Therefore, if the letter was never mailed, it could

not have been "returned" within the meaning of 28 C.F.R. §540.24 and subject to inspection. Since the above referenced federal regulation provides authorization for the opening and inspection of undeliverable and returned mail from the Post Office, the petitioner claims that since the letter was never in the possession of the Post Office, then the letter could not be properly labeled as being "returned" or "undeliverable." The petitioner further argues that 28 C.F.R. §540.24 does not authorize the BOP staff to "read" the letters it inspects, but only allows them to "see" if there is any physical evidence of contraband in the package or envelope. The Court rejects both arguments.

First, the only evidence the petitioner has which demonstrates that the BOP withheld his letter and falsified the outer envelope is his self-serving statements and conclusions set forth in an affidavit which assert that: (1) if the letter was mailed there should have been certain postal markings and an adhesive strip on the front of the envelope which are allegedly missing or forged; and (2) any mail he has sent previously during his incarceration has reached the addressees without a problem. (Habeas Petition, Attachment #3). Typically, a party's conclusory and unsupported allegations rooted in speculation and conjecture, standing alone, are insufficient proof to support a party's position. See *Evan v. Jay Instrument & Speciality Company,* 889 F.Supp. 302, 310 (S.D. Ohio 1995). The record contains no evidence to support the petitioner's assertions concerning the BOP withholding this particular letter, nor the BOP's falsification of the outer envelope. In fact a copy of the envelope has been submitted to the Court as an exhibit by both parties. Upon the Court's review, it appears that the letter did matriculate through the postal system as there are "Returned to Sender" stamps on it, a postal mark and stamp in the upper right hand corner and a bar code and number sequence across the bottom of the envelope, all of which appear to be genuine

markings. (*Id.* at Attachment #2 ). Therefore, the Court not only finds that the petitioner's self-serving affidavit testimony is insufficient on its own to support his allegations, but more importantly, it is insufficient to rebut the document evidence of a copy of the actual envelope which is contrary to the petitioner's self-serving declarations.

### 2. *Reading the Letter*

The petitioner next contends that in accordance with 28 C.F.R. §540.24, the BOP officials did not have authorization to read his letter, but only to look for contraband within the envelope. Upon seeing that there was nothing in the envelope but the letter, the envelope should have been closed and returned to the petitioner. The Court disagrees for three reasons. First, the purpose of the above referenced federal regulation is to "prevent the transmission of material, substances, and property which an inmate is not permitted to possess in the institution . . . ." 28 C.F.R. §540.24. For, the BOP officials to inspect a mailing for contraband and not read the content of the letter in order to make sure there is no future plan for the transmission of such materials would be irresponsible. Second, upon the Court's review of the federal regulation language, it is necessary for BOP officials to read what is printed on the outside and inside of the package or letter. Finally, the BOP officials are to "inspect" the mailing which means: "to examine; scrutinze; investigate; look into; check over; or view for the purpose of ascertaining the quality, authenticity or conditions of an item, produce, document, residence, business, etc." *Black's Law Dictionary,* Fifth Edition, pg. 716. The Court finds that reading the letter properly falls within the category of "inspecting" the correspondence.

Therefore, the Court does not find that the BOP officials were wrongful in their interception

of the petitioner's mail and no due process rights were violated in that regard.

    C. <u>Retaliation</u>

    The petitioner maintains that the severity of his punishment was motivated by retaliatory objectives due to the petitioner's alleged refusal to act as an informant on behalf of the Special Investigation Service regarding illegal activity among the prisoners. "In order to prevail on [a] retaliation claim[ ]," a plaintiff "bears the burden of showing, first , that he engaged in constitutionally protected conduct and, second that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials" "that would deter a person of ordinary firmness from continuing to engage in that conduct" *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003); *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999). The petitioner asserts that his punishment in the form of fifteen days in disciplinary segregation; loss of visiting privileges for one year; loss of 27 days good time credit; and a disciplinary transfer, was excessive, categorized within the most severe group of offenses, and was done in retaliation because of his refusal to cooperate with the BOP's inmate investigation. The Court finds that the petitioner has failed to sustain a retaliation claim; and its basis is three-fold.

    First, the petitioner's sole submission of proof relative to his retaliation claim is his self-serving affidavit, which as detailed above, is insufficient standing alone, to survive dismissal of the claim. Second, a prisoner's refusal to serve as an informant is not constitutionally protected conduct, and therefore cannot be used as a basis to substantiate a retaliation claim. *Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir. 1994); *Sheppard v. Moore,* 16 Fed. Appx. 574, 574 (9th Cir. 2001). Finally, the petitioner's admitted violations and prohibited acts come within the listed

  
offenses within the group of the most severe offenses under 28 C.F.R. §541.13(1).

It was determined that the petitioner attempted to introduce "hazardous tools" into the FCI which would have negatively impacted the institutional security. At the petitioner's hearing, he admitted that he attempted to have two-way radios brought into the facility so that he could continue to sneak more contraband into the facility and for purposes of leaving the facility. (Response to Petition, Exhibit 5, dated 3/7/03, pg. 3). This admission supports the disciplinary board's decision that the petitioner's conduct constituted interference with the security and overall running of the FCI. Although the petitioner argued at his disciplinary hearing that his misconduct could have been categorized as "unauthorized use of mail," which is listed as a less severe offense, the language within the "Prohibited Acts and Disciplinary Severity Scale" under 28 C.F.R. §541.13 permits the disciplinary board to elevate the severity of the unauthorized use of mail offense depending upon the seriousness of the abuse. Although within the initial charges against the petitioner, one of the petitioner's prohibited acts was categorized as unauthorized use of the mail, upon further investigation, that charge was elevated in severity; and it is undisputed that the petitioner received proper notice of the change. Based upon the facts, the record supports the decision of the disciplinary board despite the petitioner's allegations that his "greatest severity" offense ranking was imposed as an act of retaliation.

Therefore, the Court does not find the petitioner's retaliation argument to be meritorious and dismisses the claim with prejudice.

### D. Imposition of Punishment

An inmate has a constitutional right not to be deprived of a protected liberty interest without

due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986). The record supports and the petitioner admits that he has received all the process he was due in connection with the disciplinary charges brought against him and with regard to the disciplinary hearings held. Addressing each of the petitioner's sanctions, first, the petitioner had no liberty interests relative to his visiting privileges, and therefore no constitutional deprivations are implicated as a result of his temporary loss of those privileges. Second, there is no liberty interest in remaining free from administrative or disciplinary segregation. See *Mitchell v. Horn,* 318 F.3d 523, 531 (3rd Cir. 2003); *Singleton v. Patton,* 2007 WL 2228558, *3 (E.D. Ky. July 30, 2007). Third, transfers within the penal system do not rise to the level of compromising the petitioner's constitutional rights inasmuch as this sanction falls squarely within the parameters of 28 C.F.R. §541.13.

Finally, the petitioner challenges the loss of his good time credits.

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board . . . The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction nor any other standard greater than some evidence applies in this context.

*Superintendent, Mass. Corr'l Institution of Walpole v. Hill*, 472 U.S. 445, 454 (1985). A district court merely ensures that a disciplinary board's decision is not arbitrary and does have evidentiary support. *Id.* at 457. Case law supports the revocation of 27 days of good time credit for other non-

violent abuses while in federal custody. *Wooten v. Patton,* 2006 WL 1635608 (E.D. Ky. June 6, 2006) (abuse of telephone privilege); *Roque-Espinoza v. Outlaw,* 2006 WL 840425 (W.D. Tenn. Mar. 30, 2006) (bribing a BOP staff member); *Talouzi v. O'Brien,* 2006 WL 13115 (E.D. Ky. Jan. 3, 2006)(stealing data). In the instant proceeding there was "some evidence" that the petitioner committed the charged offenses. In fact, the petitioner admitted to committing the offenses. The petitioner's issues centered around whether the BOP officials had authority to open his mail and the severity of the punishment for his violations, and not whether the prohibited acts were in fact committed. The record supports the amount of evidence necessary to justify the revocation of 27 days of the petitioner's good time credits. Therefore, the Court does not find merit in reinstating the revoked time credits in this matter.

E. Impartial Disciplinary Hearing

Lastly, the petitioner maintains that he did not receive an impartial disciplinary hearing because the Disciplinary Hearing Officer was biased against the Petitioner and adversely influenced by Officer Coleman's incident report. Again, the petitioner's only support for this allegation is his unsubstantiated statements set forth in his affidavit. "In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. §541.16(b). The record does not indicate that this federal regulation was violated relative to the petitioner's disciplinary hearing. Moreover, even if the petitioner's allegations were true, there would still be no violation of the federal regulation insuring impartiality, as the petitioner's allegations do not run afoul of the federal regulations. Accordingly, there has been no showing that the petitioner received

an impartial disciplinary hearing; and his claim is without merit.

## V. <u>Conclusion</u>

The Court finds that the BOP officials were acting within the parameters of the federal regulations when they inspected the petitioner's letter. The Court further finds that there is sufficient evidence to substantiate the sanctions imposed upon the petitioner in this matter. The sanctions were not inordinately severe in accordance with the federal regulations as set forth above. Finally, the Court finds that the petitioner received an impartial disciplinary hearing. For the foregoing reasons, the Court concludes that Petitioner's claims for habeas relief filed pursuant to 28 U.S.C. §2241 lack merit. Consequently, Petitioner's application for federal habeas corpus relief shall be dismissed and the writ denied.

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus **[Doc. #1, filed July 15, 2004]** is **DENIED** and this matter is **DISMISSED WITH PREJUDICE.**

S/Arthur J. Tarnow

Arthur J. Tarnow

United States District Judge

Dated: November 16, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 16, 2007, by electronic and/or ordinary mail.

S/Catherine A. Pickles

Judicial Secretary